| | |
|---|---|
| 1 | POMERANTZ LLP |
| 2 | Jennifer Pafiti (SBN 282790) |
|   | 1100 Glendon Avenue, 15th Floor |
| 3 | Los Angeles, California 90024 |
|   | Telephone: (310) 405-7190 |
| 4 | jpafiti@pomlaw.com |
| 5 | *Attorney for Plaintiff* |
| 6 | *[Additional Counsel on Signature Page]* |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| AARON SNEED JR., Individually and on Behalf of All Others Similarly Situated, | | Case No. |
| | Plaintiff, | <u>CLASS ACTION</u> |
| v. | | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| ACELRX PHARMACEUTICALS, INC., VINCENT J. ANGOTTI, and RAFFI ASADORIAN, | | <u>DEMAND FOR JURY TRIAL</u> |
| | Defendants. | |

Plaintiff Aaron Sneed Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding AcelRx Pharmaceuticals, Inc. ("AcelRx" or the "Company"), analysts'

reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired AcelRx securities between March 17, 2020 and February 12, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. AcelRx is a specialty pharmaceutical company that focuses on the development and commercialization of therapies for the treatment of acute pain. The Company's lead product candidate is DSUVIA, a 30 mcg sufentanil sublingual tablet for the treatment of moderate-to-severe acute pain.

3. On November 2, 2018, AcelRx announced that the U.S. Food and Drug Administration ("FDA") had approved DSUVIA for the management of acute pain in adults that is severe enough to require an opioid analgesic in certified medically supervised healthcare settings, such as hospitals, surgical centers, and emergency departments.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AcelRx had deficient disclosure controls and procedures with respect to its marketing of DSUVIA; (ii) as a result, AcelRx had been making false or misleading claims and representations about the risks and

efficacy of DSUVIA in certain advertisements and displays; (iii) the foregoing conduct subjected the Company to increased regulatory scrutiny and enforcement; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5. On February 16, 2021, AcelRx disclosed that, on February 11, 2021, the Company received a warning letter from the FDA concerning promotional claims for DSUVIA. Specifically, having "reviewed an 'SDS Banner Ad' (banner) (PM-US-DSV-0018) and a tabletop display (PM-US-DSV-0049) (display)," the FDA concluded that "[t]he promotional communications, the banner and display, make false or misleading claims and representations about the risks and efficacy of DSUVIA," and "[t]hus . . . misbrand Dsuvia within the meaning of the Federal Food, Drug and Cosmetic Act (FD&C Act) and make its distribution violative." The warning letter "request[ed] that AcelRx cease any violations of the FD&C Act" and "submit a written response to th[e] letter within 15 days from the date of receipt."

6. On this news, AcelRx's stock price fell $0.21 per share, or 8.37%, to close at $2.30 per share on February 16, 2021.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). AcelRx is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

11. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, acquired AcelRx securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Defendant AcelRx is a Delaware corporation with principal executive offices located at 25821 Industrial Boulevard, Suite 400, Hayward, California 94545. The Company's common stock trades in an efficient market on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "ACRX."

14. Defendant Vincent J. Angotti ("Angotti") has served as AcelRx's Chief Executive Officer at all relevant times.

15. Defendant Raffi Asadorian ("Asadorian") served as AcelRx's Chief Financial Officer at all relevant times.

16. Defendants Angotti and Asadorian are sometimes referred to herein as the "Individual Defendants."

17. The Individual Defendants possessed the power and authority to control the contents of AcelRx's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of AcelRx's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with AcelRx, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

18. AcelRx and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. AcelRx is a specialty pharmaceutical company that focuses on the development and commercialization of therapies for the treatment of acute pain. The Company's lead product candidate is DSUVIA, a 30 mcg sufentanil sublingual tablet for the treatment of moderate-to-severe acute pain. DSUVIA is a potent opioid painkiller that is of particular use in certain special circumstances where adult patients may not be able to swallow oral medication and where access to intravenous pain relief is not possible. AcelRx has marketed DSUVIA in advertisements as a one-step, simple to administer drug, accompanied by the slogan "TONGUE AND DONE" for the product, which refers to DSUVIA's sublingual administration—*i.e.*, a tablet of DSUVIA is placed

beneath the tongue to dissolve. Marketing materials also touted that patients may retake the drug in one-hour intervals, without providing a maximum daily dosage.

20. On November 2, 2018, AcelRx announced that the FDA had approved DSUVIA for the management of acute pain in adults that is severe enough to require an opioid analgesic in certified medically supervised healthcare settings, such as hospitals, surgical centers, and emergency departments.

**Materially False and Misleading Statements Issued During the Class Period**

21. The Class Period begins on March 17, 2020, the day after AcelRx filed an annual report on Form 10-K with the SEC, during post-market hours, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 10-K"). The 2019 10-K touted the Company's sales and marketing practices for DSUVIA, representing, *inter alia*, that Defendants have "created and deployed a focused scientific support team to gather a detailed understanding of individual emergency room and hospital needs in order to present DSUVIA effectively"; have "increased awareness of the clinical profile of sublingual administration of sufentanil through publication of our clinical data"; have "engaged appropriate Advisory Boards that include representative emergency room physicians, anesthesiologists, surgeons, nurses, pharmacy and therapeutics, or P&T, committee members and other related experts to provide us with input on appropriate commercial positioning for DSUVIA for each of these key audiences"; have "built a sales and marketing organization that can define appropriate segmentation and positioning strategies and tactics for DSUVIA"; and have "established DSUVIA on hospital and ambulatory surgery center formularies through deployment of an experienced team to explain the clinical and health economic attributes of DSUVIA."

22. The 2019 10-K also represented that Defendants "may adjust our commercialization plan" by, among other things, "continuing to build and progressively deploy a high-quality, customer-focused and experienced sales organization in the United States dedicated to bringing innovative, highly valued healthcare solutions to patients, payers and healthcare providers," as needed, and by "continuing to establish DSUVIA as a suitable choice for moderate-to-severe acute pain in certified medically supervised settings."

23. Additionally, the 2019 10-K touted that Defendants "have carried out an evaluation, under the supervision, and with the participation, of management including our principal executive officer and principal financial officer, of our disclosure controls and procedures . . . as of the end of the period covered by" the 2019 10-K, and that, "[b]ased on their evaluation, our principal executive officer and principal financial officer concluded that . . . our disclosure controls and procedures were effective as of December 31, 2019."

24. Appended as exhibits to the 2019 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that "[t]he [2019 10-K] fully complies with the requirements of Section 13(a) or Section 15(d) of the Exchange Act" and that "[t]he information contained in the [2019 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

25. On May 11, 2020, AcelRx filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2020 (the "1Q20 10-Q"). The 1Q20 10-Q contained substantively the same statements as referenced in ¶ 23, *supra*, touting the effectiveness of the Company's disclosure controls and procedures for the period covered by the report.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

26. Appended as exhibits to the 1Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by the Individual Defendants.

27. On August 10, 2020, AcelRx filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "2Q20 10-Q"). The 2Q20 10-Q contained substantively the same statements as referenced in ¶ 23, *supra*, touting the effectiveness of the Company's disclosure controls and procedures for the period covered by the report.

28. Appended as exhibits to the 2Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by the Individual Defendants.

29. On November 5, 2020, AcelRx filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2020 (the "3Q20 10-Q"). The 3Q20 10-Q contained substantively the same statements as referenced in ¶ 23, *supra*, touting the effectiveness of the Company's disclosure controls and procedures for the period covered by the report.

30. Appended as exhibits to the 3Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 24, *supra*, signed by the Individual Defendants.

31. The statements referenced in ¶¶ 21-30 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) AcelRx had deficient disclosure controls and procedures with respect to its marketing of DSUVIA; (ii) as a result, AcelRx had been making false or misleading claims and representations about the risks and efficacy of DSUVIA in certain advertisements and displays; (iii) the foregoing conduct subjected

the Company to increased regulatory scrutiny and enforcement; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

32. On February 16, 2021, AcelRx filed a current report on Form 8-K with the SEC, disclosing that, on February 11, 2021, AcelRx received a warning letter from the FDA concerning promotional claims for DSUVIA. Specifically, the Form 8-K disclosed, in relevant part:

> On February 11, 2021, AcelRx . . . received a warning letter from the Office of Prescription Drug Promotion ("OPDP") of the [FDA] (the "Letter") relating to a banner advertisement the Company submitted to the OPDP on December 6, 2019 (the "Banner Ad"), and a tabletop display the Company submitted on February 28, 2020, and resubmitted to the OPDP at its request on September 23, 2020 (the "Tabletop Display," and together with the Banner Ad, the "Promotional Material"). The Company submitted the materials to the OPDP pursuant to the FDA requirement that sponsors submit all promotional materials to the FDA at the time of their initial dissemination or publication. The FDA's concerns identified in the Letter include its view that the Promotional Material makes misleading claims and representations about the risks and efficacy of DSUVIA® because the Promotional Material does not reveal facts that are material in light of the representations made . . . . [T]he Company has not used the Banner Ad since late 2019, nor used the table drape that is part of the Tabletop Display since November 2019; however, the Company plans to review its marketing materials to identify any potential revisions in light of the Letter. The Company intends to respond to the FDA within the timeframe requested in the Letter and seek guidance and clarification from the FDA on the concerns raised in the Letter. The Letter does not restrict the Company's ability to manufacture or sell DSUVIA. The Company cannot give any assurances, however, that the FDA will be satisfied with its response to the Letter or that such response will resolve the issues identified in the Letter.

33. The FDA warning letter advised that the agency "has reviewed an 'SDS Banner Ad' (banner) (PM-US-DSV-0018) and a tabletop display (PM-US-DSV-0049) (display) for DSUVIA (sufentanil) sublingual tablet, CII (Dsuvia) submitted by AcelRx," and that "[t]he promotional communications, the banner and display, make false or misleading claims and representations about the risks and efficacy of DSUVIA," which "misbrand Dsuvia within the

meaning of the Federal Food, Drug and Cosmetic Act (FD&C Act) and make its distribution violative."

34. Specifically, the FDA warning letter noted the following deficiency with respect to the banner and tabletop display at issue: "The banner includes the claim, 'DSUVIA® comes in one strength for acute pain. . . **TONGUE AND DONE.'** (bolded emphasis original; reference omitted) in conjunction with an image of the single-dose applicator device. Similarly, the display prominently includes the claim **'TONGUE AND DONE'** (bolded emphasis original)." The FDA found that "[t]hese presentations are misleading because they imply that the administration of Dsuvia consists of a simple, one-step process, when this is not the case," and that, "[i]n fact, there are numerous administration steps outlined in the PI [the FDA-approved product labeling], including a separate, distinct step to visually confirm tablet placement in the patient's sublingual space of the mouth."

35. The FDA warning letter further advised that the banner at issue was deficient for stating "Minimum redosing interval **1 hour**" and "Average redosing interval **3 hours\*…** \*Shown over a 12-hour period in the pivotal trial" (emphases and alteration in original), because they "create a misleading impression about the use of Dsuvia" by "omit[ting] . . . material information from the DOSING AND ADMINISTRATION section of the PI." Specifically, the banner should have included the words "Do not exceed 12 tablets in 24 hours" because, "[b]y omitting this material information about the maximum daily dosage, the banner creates a misleading impression about the safe use of Dsuvia." The FDA noted that "[t]hese omissions are concerning from a public health perspective due to the serious risks associated with overdose with Dsuvia, including respiratory depression and death, that should be considered when prescribing the product."

36. Additionally, the FDA warning letter took issue with the banner's claim that "DSUVIA® comes in one strength for acute pain" because "the banner makes representations about the indication and use of the drug but fails to adequately convey material information regarding Dsuvia's limitations of use, thereby creating a misleading impression about the drug."

37. The FDA warning letter also found that, "unlike the benefit claims in the banner, which utilized a color background and large font, the full indication with the limitations of use are intermingled with risk information in a paragraph format in a much smaller font size and a plain white background," which were only accessible to viewers by scrolling down the banner and, therefore, did "not mitigate the misleading impression."

38. The FDA warning letter further noted that the banner and tabletop display at issue "fail to present information relating to the Boxed Warning, Contraindications, Warnings and Precautions, and Adverse Reactions for Dsuvia with a prominence and readability reasonably comparable with the presentation of information relating to the benefits of Dsuvia."  The FDA warning letter found that "benefit claims for Dsuvia are presented in conjunction with colorful graphics and large bolded headlines, with significant white space," whereas "the risk information is relegated farther down in paragraph format with less prominence." The FDA therefore concluded that, "[b]y failing to adequately present the risks and benefits associated with Dsuvia, the banner and display create a misleading impression about the safe and effective use of the drug."

39. Finally, the FDA warning letter "request[ed] that AcelRx cease any violations of the FD&C Act" and "submit a written response to th[e] letter within 15 days from the date of receipt."

40. On this news, AcelRx's stock price fell $0.21 per share, or 8.37%, to close at $2.30 per share on February 16, 2021.

41.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired AcelRx securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

43.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, AcelRx securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by AcelRx or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of AcelRx;

- whether the Individual Defendants caused AcelRx to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of AcelRx securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

48. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- AcelRx securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold AcelRx securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

49. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

51. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of AcelRx securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire AcelRx securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

54. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for AcelRx securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about AcelRx's finances and business prospects.

55. By virtue of their positions at AcelRx, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of AcelRx, the Individual Defendants had knowledge of the details of AcelRx's internal affairs.

57. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of AcelRx. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to AcelRx's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of AcelRx securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning AcelRx's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired AcelRx securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

58.     During the Class Period, AcelRx securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of AcelRx securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of AcelRx securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of AcelRx securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

59.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

61.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.     During the Class Period, the Individual Defendants participated in the operation and management of AcelRx, and conducted and participated, directly and indirectly, in the conduct of AcelRx's business affairs.  Because of their senior positions, they knew the adverse non-public information about AcelRx's misstatement of income and expenses and false financial statements.

63.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to AcelRx's financial condition and results of operations, and to correct promptly any public statements issued by AcelRx which had become materially false or misleading.

64.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which AcelRx disseminated in the marketplace during the Class Period concerning AcelRx's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause AcelRx to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of AcelRx within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of AcelRx securities.

65.     Each of the Individual Defendants, therefore, acted as a controlling person of AcelRx.  By reason of their senior management positions and/or being directors of AcelRx, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, AcelRx to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of AcelRx and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by AcelRx.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: June 8, 2021

    Respectfully submitted,

    POMERANTZ LLP

    */s/ Jennifer Pafiti*
    Jennifer Pafiti (SBN 282790)
    1100 Glendon Avenue, 15th Floor
    Los Angeles, California 90024
    Telephone: (310) 405-7190
    jpafiti@pomlaw.com

    POMERANTZ LLP
    Jeremy A. Lieberman
    (*pro hac vice* application forthcoming)
    J. Alexander Hood II
    (*pro hac vice* application forthcoming)
    600 Third Avenue, 20th Floor
    New York, New York 10016

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS