UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AARON SNEED JR.,<br><br>    Plaintiff,<br><br>v.<br><br>ACELRX PHARMACEUTICALS, INC., et al.,<br><br>    Defendants. | Case No. 21-cv-04353-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF No. 57] |

Now before the Court is Defendants' Motion to Dismiss this putative securities class action. MTD, ECF No. 57. Plaintiffs oppose the Motion. Opp., ECF No. 63. For the reasons discussed at the September 1, 2022 motion hearing and further explained below, the Court GRANTS Defendants' Motion to Dismiss WITH LEAVE TO AMEND.

**I.   BACKGROUND**

On June 8, 2021, Plaintiff Aaron Sneed Jr. filed a securities class action suit in this Court alleging violations of various securities laws by AcelRx Pharmaceuticals, Inc. ("AcelRx"), AcelRx Chief Executive Officer Vincent J. Angotti, and AcelRx Chief Financial Officer Raffi Asadorian. Complaint, ECF No. 1. The Court appointed Aaron Sneed Jr. and Yaacov Musry as co-lead plaintiffs and Pomerantz LLP as lead counsel. ECF No. 47.

On March 3, 2022, Plaintiffs filed an amended complaint. FAC, ECF No. 54. The FAC adds one additional Defendant, AcelRx Chief Health Officer Pamela Palmer. *Id.* Plaintiffs assert four counts under the Securities and Exchange Act of 1934 ("Exchange Act") on behalf of a class including all individuals who purchased or otherwise acquired AcelRx securities (ticker symbol ACRX) between March 20, 2019 and February 12, 2021. *Id.* ¶ 1.

AcelRx is a pharmaceutical company that develops therapies for the treatment of acute

pain. *Id.* ¶ 32. DSUVIA, the product at the center of this suit, is an opioid painkiller that is administered sublingually, and therefore particularly useful in circumstances where patients cannot swallow oral medication and access to intravenous pain relief is not possible. *Id.* ¶¶ 32-33. In November 2018, the U.S. Food and Drug Administration ("FDA") approved AcelRx's application for DSUVIA. *Id.* ¶ 54. In so doing, the FDA also approved the DSUVIA Risk Evaluation and Mitigation Strategy ("REMS"), which is "a drug safety program that the [FDA] can require for certain medications with serious safety concerns to help ensure the benefits of the medication outweigh its risks." *Id.* ¶¶ 35, 54. As an FDA-approved drug, DSUVIA is subject to the Federal Food, Drug, and Cosmetic Act ("FDCA"), which prohibits the introduction into interstate commerce of any drug that is "misbranded." *Id.* ¶ 7, 85; *see* 21 U.S.C. § 331.

On February 11, 2021, AcelRx received a warning letter from the FDA ("Warning Letter") indicating that two of AcelRx's promotional materials—a banner advertisement and a tabletop display—made "false or misleading claims and representations about the risks and efficacy of DSUVIA" and therefore violated the FDCA. *Id.* ¶ 15. After AcelRx publicly disclosed this letter on February 16, 2021, the stock price fell $0.21 per share, or 8.37%. *Id.* ¶ 18. Plaintiffs allege that "Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies." *Id.* ¶ 14. Plaintiffs point to the Warning Letter in claiming that Defendants made false and/or misleading statements or failed to disclose information indicating that "(1) AcelRx failed to implement and/or maintain sufficient disclosure controls and procedures regarding the marketing of DSUVIA; (2) as a result, the Company engaged in the Misbranding Violations; and (3) the Company was therefore subject to increased risk of regulatory investigations or enforcement actions." *Id.* Plaintiffs also assert that Defendants engaged in a scheme to market DSUVIA beyond its permitted label. *Id.* ¶ 13. Finally, Plaintiffs claim that the individual Defendants engaged in insider trading by selling shares of the stock after receiving the Warning Letter but before disclosing it to the public. *Id.* ¶ 18.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

*Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). But the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In addition to the pleading standards discussed above, a plaintiff asserting a private securities fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b); *see also In re VeriFone Holdings*, 704 F.3d at 701. Similarly, the PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. § 78u-4(b)(1)(B). The PSLRA further requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). "To satisfy the requisite state of mind element, a complaint must allege that the defendant[] made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings*, 704 F.3d at 701 (internal quotation marks and citation omitted) (alteration in original). The scienter allegations must give rise not only to a plausible inference of scienter, but to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

3

### III. REQUEST FOR JUDICIAL NOTICE

Ordinarily, a district court's inquiry on a Rule 12(b)(6) motion to dismiss is limited to the pleadings. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts may take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Indisputable facts are those that are "generally known" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*

Defendants request that the Court take judicial notice of: Exhibit 1, AcelRx Press Release, issued on November 2, 2018; Exhibit 2, DSUVIA REMS, approved by FDA on November 2, 2018; Exhibit 3, DSUVIA Prescribing Information, approved by FDA on November 2, 2018; Exhibit 4, DSUVIA Directions for Use; Exhibit 5, AcelRx Press Release, issued on January 7, 2019; Exhibit 6, AcelRx Press Release, issued on January 31, 2019; Exhibit 7, Excerpts of AcelRx Form 10-K (FY 2018), filed with SEC on March 7, 2019; Exhibit 8, Transcript of AcelRx presentation at the 29th Annual Oppenheimer Health Care Conference, webcast live on March 20, 2019; Exhibit 9, AcelRx Press Release, issued on April 11, 2019; Exhibit 10, Excerpts of AcelRx Form 10-Q (Q1 2019), filed with SEC on May 9, 2019; Exhibit 11, Transcript of AcelRx Q2 2019 earnings call, held on August 5, 2019; Exhibit 12, Excerpts of AcelRx Form 10-Q (Q2 2019), filed with SEC on August 6, 2019; Exhibit 13, Transcript of AcelRx Q3 2019 earnings call, held on November 6, 2019; Exhibit 14, Excerpts of AcelRx Form 10-Q (Q3 2019), filed with SEC on November 7, 2019; Exhibit 15, Transcript of AcelRx Q4 2019 earnings call, held on March 16, 2020; Exhibit 16, Excerpts of AcelRx Form 10-K (FY 2019), filed with SEC on March 16, 2020; Exhibit 17, Transcript of AcelRx Q1 2020 earnings call, held on May 11, 2020; Exhibit 18, Excerpts of AcelRx Form 10-Q (Q1 2020), filed with SEC on May 11, 2020; Exhibit 19, Excerpts of AcelRx Form 10-Q (Q2 2020), filed with SEC on August 10, 2020; Exhibit 20, Excerpts of AcelRx Form 10-Q (Q3 2020), filed with SEC on November 5, 2020; Exhibit 21, AcelRx Form 8-K, filed with SEC on February 16, 2021; Exhibit 22, Analyst report published February 16, 2021;

4

1   Exhibit 23, Analyst report published February 17, 2021; Exhibit 24, Form 4 filings for Defendant

2   Angotti, filed with SEC on February 13, 2019, June 5, 2019, November 12, 2019, February 7,

3   2020, June 15, 2020, and February 12, 2021; Exhibit 25, Form 4 filings for Defendant Asadorian,

4   filed with SEC on February 13, 2019, February 7, 2020, and February 12, 2021; Exhibit 26, Form

5   4 filings for Defendant Palmer, filed with SEC on February 13, 2019, February 7, 2020, and

6   February 12, 2021; Exhibit 27, FDA webpage on *Prescription Drug Advertising: Questions and*

7   *Answers*.  ECF No. 58; *see also* Brien Declaration, ECF No. 57-1.

8          Plaintiffs responded to the motion.  ECF No. 61.  Plaintiffs do not take a position on

9   Defendants' request to incorporate by reference and/or judicially notice documents relied upon in

10  the complaint (Exhs. 1-3, 8, 10, 12, 14-16, 18-22, and 24-26), with the caveat that the Court

11  should not accept the truth of any statements within them.  *Id.* at 2-3.  With regard to the exhibits

12  not referenced in the complaint (Exhs. 4-7, 9, 11, 13, 17, 23, 27), Plaintiffs believe the

13  incorporation by reference doctrine does not apply, and they further assert that if the Court takes

14  judicial notice of the documents, it should not assume the truth of any statements within them that

15  dispute facts in the complaint.  *Id.* at 3.

16         The incorporation by reference doctrine permits the Court to take into account documents

17  "whose contents are alleged in a complaint and whose authenticity no party questions, but which

18  are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076

19  (9th Cir. 2005) (internal quotation marks and citations omitted) (alteration in original). The Court

20  finds that Exhibits 1-3, 8, 10, 12, 14-16, 18-22, and 24-26 are incorporated by reference into the

21  FAC.  *See, e.g.,* FAC ¶¶ 4, 54 (Exh. 1); ¶¶ 5, 16, 54 (Exh. 2); ¶ 90 (Exh. 3); ¶ 98 (Exh. 8); ¶¶ 102,

22  104 (Exh. 10); ¶¶ 106, 108 (Exh. 12); ¶¶ 110, 112 (Exh. 14); ¶¶ 121, 123 (Exh. 15); ¶¶ 114-15,

23  117, 119 (Exh. 16); ¶¶ 125-26 (Exh. 18); ¶¶ 128, 130 (Exh. 19); ¶¶ 132, 134, 136, 138 (Exh. 20);

24  ¶¶ 15, 141-43 (Exh. 21); ¶ 153 (Exh. 22); ¶¶ 18, 26 (Exh. 24); ¶¶ 18, 27 (Exh. 25); ¶¶ 18, 28 (Exh.

25  26).

26         The remaining documents include an SEC filing, AcelRx Form 10-K (FY 2018) (Exh. 7);

27  pages from the AcelRx and FDA websites (Exhs. 4, 27); press releases (Exhs. 5-6, 9); transcripts

28  of earnings calls (Exhs. 11, 13, 17); and an analyst report (Exh. 23), all of which are proper

United States District Court
Northern District of California

subjects of judicial notice. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.,* 540 F.3d 1049, 1064 n.7 (SEC filings); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 617 (N.D. Cal. 2021) (publicly available websites); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) (press releases); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2018 WL 1411129, at *10 (N.D. Cal. Mar. 21, 2018) (conference call transcripts); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, No. 12-cv-06039-WHO, 2013 WL 6441843, at *5 (N.D. Cal. Dec. 9, 2013) (analyst reports). These exhibits are all publicly available, and their accuracy is not disputed by Plaintiffs. The Court thus takes judicial notice of the existence of these exhibits. The Court does not take notice of the truth of any of the facts asserted in these documents. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-cv-04844-BLF, 2019 WL 6877195, at *23 (N.D. Cal. Dec. 17, 2019).

Defendants' request for judicial notice is GRANTED.

**IV.   DISCUSSION**

Defendants move to dismiss the complaint for failure to meet the pleading requirements for all claims. *See* MTD. The Court indicated at the hearing that it would grant the motion to dismiss with leave to amend. This order is intended to highlight the areas of primary concern to the Court.

**A.   Claim 1: Section 10(b) and Rule 10b-5(b)**

Section 10(b) makes it unlawful "for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]" 15 U.S.C. § 78j(b). Rule 10b-5, promulgated by the Securities and Exchange Commission under the authority of § 10(b), in turn makes it unlawful for any person,
> (a) To employ any device, scheme or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To state a securities fraud claim, a plaintiff must plead: "(1) a material

1  misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or
2  omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss
3  causation." *Dearborn Heights*, 856 F.3d at 613. Defendants' motion is predicated on requirements
4  one and two. *See* MTD at 9-20 (material misrepresentation or omission), 20-25 (scienter).

         **i.   Falsity**

         The FAC fails to plead a material misrepresentation or omission. Plaintiffs assert that several of AcelRx's statements were false or misleading because they were misbranding DSUVIA. Plaintiffs point to various categories of statements, including (1) statements about DSUVIA's use and administration, *see* FAC ¶¶ 89, 98, 100; (2) statements about launch efforts and future plans, *see* FAC ¶¶ 114, 115, 121; (3) statements about risks, *see* FAC ¶¶ 136, 138; (4) statements about the REMS, *see* FAC ¶¶ 102, 106, 110, 123; and (5) SEC filing certifications, *see* FAC ¶¶ 104, 108, 112, 117, 119, 125, 126, 128, 130, 132, 134.

         To plead falsity, a plaintiff must plead "specific facts indicating why" the statements at issue were false. *Metzler*, 540 F.3d at 1070. "[T]o meet the requirements of Rule 9(b), Plaintiffs must, for each allegedly false or misleading statement, clearly allege with particularity *why* the statement was false or misleading *at the time it was made*." *Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, No. 15-cv-02938-HSG, 2016 WL 7475555, at *3 (N.D. Cal. Dec. 29, 2016); *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996) ("[S]tatement or omission must be shown to have been false or misleading when made."). Here, many of the misstatements identified in the FAC are not related to the misbranding violations, meaning the reasons Plaintiffs provide as to why those statements are false or misleading bear no connection to the substance of the statements. *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 807 (N.D. Cal. 2019) (finding allegations insufficient where "the reasons . . . why many of the statements are false or misleading bear no connection to the substance of the statements"); *see also Jui-Yang Hong v. Extreme Networks, Inc.*, No.15-cv-04883-BLF, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017). While the misbranding violations are serious, the FAC does not allege a sufficient nexus between the misbranding of DSUVIA and the identified statements to investors. The fact that the FDA ultimately determined that two of AcelRx's DSUVIA advertisements were in violation of the

United States District Court
Northern District of California

FDCA does not show that the statements identified by Plaintiffs in the FAC were false at the time they were made. *See Norfolk Cty Ret. Sys.*, 2016 WL 7475555, at *3. Therefore, Plaintiffs have not adequately pled falsity.

### ii. Scienter

The falsity finding is dispositive to the Court's holding. Nonetheless, to aid in Plaintiffs' amendment process, the Court further determines that the FAC fails to plead scienter. Plaintiffs must plead facts that give rise to a "strong inference" of scienter. *Metzler*, 540 F.3d at 1061. The facts alleged "must not only be particular, but also must 'strongly imply [the defendant's] *contemporaneous* knowledge that the statement was false when made.'" *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1102 (C.D. Cal. 2003) (quoting *In re Read-Rite*, 335 F.3d 843, 847 (9th Cir. 2003)) (alteration in original).

The FAC contains few allegations addressing scienter. In their opposition to the motion to dismiss, Plaintiffs assert that scienter can be inferred when holistically considering the following: (1) insider selling, (2) access to information, (3) core operations, (4) SOX attestations, (5) a desire to sell at inflated prices. Opp. at 16-22. The Court finds that these bases do not give rise to a strong inference of scienter.

First, Plaintiffs assert that the individual Defendants sold thousands of shares of stock the day they received the FDA Warning Letter, then waited five days to disclose the letter. Opp. at 16. But Plaintiffs do not allege facts showing that the sales at issue were "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009)). There are no allegations about the proportion of shares the individual Defendants sold during the class period or about past trading patterns. *See Metzler*, 540 F.3d at 1067 ("Three factors are relevant to [whether insider trading allegations constitute circumstantial evidence of scienter]: (1) the amount and percentage of the shares sold; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's trading history." (citation omitted)). Further, the alleged misstatements were made before the Warning Letter. The fact that the individual

1  Defendants sold shares after receiving the Warning Letter in no way reflects their knowledge or
2  state of mind *at the time* of the alleged misstatements.
3        Plaintiffs next argue that Defendants' access to information undermining their public
4  statements supports scienter. Opp. at 17. Plaintiffs assert that because Defendants were working
5  with the FDA on the DSUVIA application, including the REMS, they were aware of the
6  applicable regulatory requirements, and therefore should have known they were in violation of
7  those requirements. Opp. at 17-18. But Defendants' awareness of FDA regulations and their
8  participation in developing the REMS do not strongly imply that they knew any specific statement
9  was false at the time it was made. Plaintiffs also rely on the statements of three former employees
10 ("FEs"), *see* FAC ¶¶ 62-84, including their allegations that at least one individual Defendant
11 signed off on marketing materials, as well as more general allegations about the marketing team
12 structure and practices, in asserting that the advertising and marketing of DSUVIA were
13 "deliberately reckless." Opp. at 17-20. But these allegations lack the specificity required to show
14 that Defendants had contemporaneous knowledge that any particular statement was untrue.
15       Third, Plaintiffs assert the core operations theory, under which "scienter may be imputed
16 based on the inference that key officers have knowledge of the core operations of the company."
17 *Mulligan v. Impax Lab'ys, Inc*., 36 F. Supp. 3d 942, 969 (N.D. Cal. 2014) (internal quotation
18 marks and citation omitted). If a plaintiff provides "allegations regarding a management's role in
19 the company that are particular and suggest that the defendant had actual access to the disputed
20 information, and where the nature of the relevant fact is of such prominence that it would be
21 absurd to suggest that management was without knowledge of the matter," then falsity itself can
22 support scienter. *Zucco Partners*, 552 F.3d at 1000 (internal quotation marks and citation
23 omitted). This case is not one of the "rare circumstances" when scienter is adequately alleged
24 through this theory. *See Mulligan*, 36 F. Supp. 3d at 969. Plaintiffs have failed to plead particular
25 allegations that any individual Defendant had access to any disputed information, or that there is
26 any relevant fact that would have been absurd for AcelRx management not to know.
27       Next, Plaintiffs assert that the signed SOX certifications support scienter. But the case
28 from this District that Plaintiff relies on is distinguishable because there, the defendants made later

9

1    statements that directly contradicted their prior SOX certifications. *See Mulderrig v. Amyris, Inc.*,
2    492 F. Supp. 3d 999, 1028 (N.D. Cal. 2020). And even then, the Court found a strong inference of
3    scienter based on the totality of the allegations, of which the SOX certifications were just one. *Id.*
4    at 1030. Here, there are no allegations to show that Defendants knew the SOX certifications were
5    untrue when made. Finally, Plaintiffs assert that "[a] desire to inflate a stock price to sell shares
6    through public offerings as alleged here [] also bolsters scienter," Opp. at 21, but there are no
7    allegations in the FAC regarding price inflation.
8          Plaintiffs also argue that the totality of the allegations are sufficient to support scienter.
9    Opp. at 32. But given the weaknesses discussed above, the allegations collectively do not give
10   rise to a strong inference of scienter. The Court GRANTS the motion to dismiss the Rule 10b-
11   5(b) claim WITH LEAVE TO AMEND.

12         **B.    Claim 2: Section 10(b) and Rule 10b-5(a) and (c)**
13         Plaintiffs also bring a claim under subsections (a) and (c) of Rule 10b-5, quoted above.
14   Defendants assert that this claim must fail because it is a mere "repackaging" of the Rule 10b-5(b)
15   claim. MTD at 25. But Defendants' "argument that Rule 10b-5(a) and (c) claims cannot overlap
16   with Rule 10b-5(b) statement liability claims is foreclosed by *Lorenzo*, which rejected the
17   petitioner's argument that Rule 10b-5(a) and (c) 'concern "scheme liability claims" and are
18   violated only when conduct other than misstatements is involved.'" *In re Alphabet, Inc. Sec.*
19   *Litig.*, 1 F.4th 687, 709 (9th Cir. 2021) (quoting *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101-02
20   (2019)). The Supreme Court in *Lorenzo* clarified that there is "considerable overlap" between the
21   different subsections of Rule 10b-5, and it held that "dissemination of false or misleading
22   statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b-
23   5." *Id.* at 1100-02.
24         Here, Plaintiffs do not adequately allege a violation of subsections (a) and (c), under either
25   the *Lorenzo* dissemination theory or a more traditional scheme liability theory. First, under
26   *Lorenzo*, Plaintiffs would need to show the dissemination of false or misleading statements with
27   intent to defraud. As discussed above, Plaintiffs do not adequately allege any false or misleading
28   statements, nor do they adequately allege scienter. They therefore cannot proceed under this

1 theory.

2      Plaintiffs can also establish a violation of subsections (a) and (c) by adequately alleging scheme liability, which they seem to be pursuing. See FAC ¶ 174 ("Defendants carried out a plan, scheme and course of conduct . . . ."); Opp. at 22-24. But the FAC does not adequately plead scheme liability under subsections (a) and (c). In their opposition to the motion to dismiss, Plaintiffs clarify that their scheme liability claim is based on (1) Defendants overstating the potential market size of DSUVIA and (2) insider trading. Opp. at 23-24. The FAC does not allege with any particularity that Defendants engaged in a scheme to overstate the potential market size for DSUVIA. Nor have Plaintiffs alleged sufficient facts to show that the individual Defendants engaged in a scheme of insider trading. At the hearing, the Plaintiffs indicated they could provide additional factual support for the Rule 10b-5(a) and (c) claim. The Court GRANTS the motion to dismiss the Rule 10b-5(a) and (c) claim WITH LEAVE TO AMEND.

### C.     Claim 3: Section 20(a)

Section 20(a) of the Exchange Act extends liability for § 10(b) violations to those who are "controlling persons" of the alleged violations. *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1572 (9th Cir. 1990); *see* 15 U.S.C. § 78t(a). To prevail on their claim for violations of § 20(a), Plaintiffs must first allege a violation of § 10(b). *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002). They have failed to do so here. Accordingly, the Court GRANTS the motion to dismiss the § 20(a) claim against Defendants Angotti, Asadorian, and Palmer WITH LEAVE TO AMEND.

### D.     Claim 4: Section 20A

Section 20A of the Exchange Act prohibits trading "while in possession of material, nonpublic information." 15 U.S.C. § 78t-1. To prevail on their claim for violations of § 20A, Plaintiffs must first allege a violation of § 10(b). *See In re VeriFone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993). They have failed to do so here. Accordingly, the Court GRANTS the motion to dismiss the § 20A claim against Defendants Angotti, Asadorian, and Palmer WITH LEAVE TO AMEND.

## V. ORDER

The Court GRANTS Defendants' Motion to Dismiss WITH LEAVE TO AMEND. Plaintiffs SHALL file a second amended complaint ("SAC"), if they are able to rectify the defects discussed above, no later than sixty days from the date of this Order.  No parties or claims may be added without leave of Court.  Plaintiffs SHALL provide a chart with the SAC including a numbered list of the false and misleading statements, and for each statement: (1) a citation to the pleading; (2) the identity of the speaker; (3) the date of the statement; (4) the location of the statement; (5) evidence the statement was false when made; and (6) evidence of scienter with respect to that statement.  Plaintiffs SHALL provide a redline of the SAC against the FAC.

**IT IS SO ORDERED.**

Dated:  September 28, 2022

_____
BETH LABSON FREEMAN
United States District Judge